Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7258 | **DATE** | 2/13/2002 |
| **CASE TITLE** | JOSEPH MUCH vs. PENN-AMERICA INSURANCE CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. Discovery to close on 5/14/02. Pretrial conference set for 8/6/02 at 1:30 p.m. Jury trial set for 9/23/02 at 10:00 a.m. Enter Memorandum Opinion And Order. Defendant's motion for summary judgment [33-1] and plaintiffs' motion for summary judgment [27-1] are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | ✗ Memo ~~Notices~~ mailed by judge's staff. | | FEB 14 2002 date docketed | 40 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | CM docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSEPH MUCH and BERNICE MUCH,  )
          Plaintiffs,  ) Case No. 99 C 7258
          v.  ) Hon. John W. Darrah
PENN-AMERICA INSURANCE
COMPANY, a foreign corporation  )
          Defendant.  )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, John and Bernice Much ("Plaintiffs"), filed a four-count complaint against Defendant, Penn-America Insurance Company ("Penn-America"). Count I alleges that Penn-America is liable to Plaintiffs in the amount of damages to the insured property. Count II alleges that Penn-America is liable to Plaintiffs in the amount of damages for a fire that occurred while the policy was still in force. Count III alleges that Penn-America is liable to Plaintiffs for lost rents due to its failure to pay Plaintiffs' claim. Count IV seeks attorneys' fees under section 155 of the Illinois Insurance Code, 215 Ill. Comp. Stat. 5/155 (2002).

Plaintiffs and Penn-America have both moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] Penn-America argues that summary judgment in its favor is appropriate because the insurance policy is void under section 154 of the Illinois Insurance Code, 215 Ill. Comp.

---

[1] Penn-America had previously filed a motion for summary judgment that was denied. Penn-America moved for a rehearing on its motion for summary judgment, and that motion was granted on November 27, 2001.

Stat. 5/154 (2002), due to Plaintiffs' nondisclosure of a prior fire on the insured property. Plaintiffs argue that summary judgment in their favor is appropriate because Penn-America had knowledge of the prior fire.

For the reasons that follow, Penn-America's motion for summary judgment [33-1] and Plaintiffs' motion for summary judgment [27-1] are denied.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate through specific evidence that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726,

731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1")[2] and exhibits are as follows.

Penn-America is engaged in the business of insuring property and casualty risks in Illinois and elsewhere. (Def.'s 56.1 ¶ 3.) Plaintiffs owned a store located at 5915 South Michigan, Chicago, Illinois ("the premises"). (Def.'s 56.1 ¶ 5; Pl.'s 56.1 ¶ 1.) Penn-America delivered an insurance policy, policy number PAC 1038585 ("the policy"), to Plaintiffs insuring the premises against property damage for the period December 27, 1998 to December 27, 1999. (Def.'s 56.1 ¶ 6; Pl.'s 56.1 ¶ 1.) This was the second of two policies between the parties. Penn-America had previously insured the premises from May 1, 1996 to May 1, 1997.

Penn-America's underwriting guidelines and procedures require review and acceptance of applications by the managing general agent ("MGA"), using published industry rates and rules. (Pls.' 56.1 ¶ 7.) Applications may be declined by the MGA if there was a fire within the last five years. (Pls.' 56.1 ¶ 7.) However, if the application is approved, a higher premium will be quoted. (Pls.'

---

[2]The Court will not consider unsupported statements of fact or general "denials" that do not contain references to the factual record, as required by Local Rule 56.1(3). *See Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process). It is deemed as admitted all 56.1 responses which fall into this category.

Defendant did not respond to Plaintiffs' Local Rule 56.1 Statement of Material Facts. Therefore, these paragraphs are deemed as admitted.

-3-

56.1 ¶ 7.) If prior fire and fire damage is known, a policy would not be issued at any premium, because such damage substantially increases the risk of collapse of roof and information about such damage is needed to evaluate the future risk of collapse. (Pls.' 56.1 ¶ 8.)

The application for the 1996-1997 Penn-America policy disclosed that a fire had occurred at the premises on April 21, 1995 and that a claim of $169,919 had been paid. (Def.'s 56.1 ¶ 16; Pls.' 56.1 ¶ 5.) At the time of the fire in 1995, the premises was insured by a policy issued by the Indiana Insurance Company. (Def.'s 56.1 ¶ 15.)

After receiving the 1996-1997 application, Penn-America issued Plaintiff policy number PAC 6011083 insuring the premises for the period of May 1, 1996 through May 1, 1997. (Pls.' 56.1 ¶ 6.)

Wasserman, an insurance broker, who had prior business dealings with Mr. Much over a period of years, obtained the policy for plaintiffs. (Pl.'s 56.1 ¶ 2.) The 1998 application did not disclose that they had a prior 1996-1997 policy with Penn-America for the premises that was cancelled or that a fire loss had occurred on the premises on April 21, 1995. (Def.'s 56.1 ¶¶ 7, 10, 15; Pls.' 56.1 ¶ 2.) However, the 1996-1997 and the 1998-1999 policies were issued by different MGAs. (Def.'s 56.1 ¶ 17.)

On June 28, 1999, a portion of the roof at the premises collapsed. (Pls.' 56.1 ¶ 10.) On July 2, 1999, the roof further collapsed. (Pls.' 56.1 ¶ 10.) After the roof collapsed, Plaintiffs made a collapse claim on the policy. (Def.'s 56.1 ¶ 18.) On July 25, 1999, a fire occurred at the premises. (Pls.' 56.1 ¶ 11.)

After the roof collapsed, Penn-America retained an adjuster to investigate the loss. (Pls.' 56.1 ¶ 12.) Penn-America hired a structural engineer, August W. Domel ("Domel") of Engineering

Systems, Inc., to examine the premises on its behalf. (Def.'s 56.1 ¶¶ 22, 30, 31.) Domel is an Illinois-licensed structural and professional engineer who practices engineering in the state of Illinois. (Def.'s 56.1 ¶ 30.)

Domel inspected the premises on July 8, 1999. (Def.'s 56.1 ¶¶ 22, 29, 32.) Domel photographed the building and evaluated the conditions and strength of the building and the roof joists involved in a collapse. (Def.'s 56.1 ¶ 32.) He found the roof joists had old fire damage and old cracking damage which existed for a long time before the reported collapse. (Def.'s 56.1 ¶ 32.) To be observed before the collapse, the old fire and cracking damage would have required removal of the ceiling. (Def.'s 56.1 ¶ 32.)

Domel's report stated as follows. At the time of the collapse, the roof joists were reported to be subject to normal structural loading which was within the fail-strength design limits of the roof joists. (Def.'s 56.1 ¶¶ 32, 34.) The roof joists failed under normal design loads because the old fire damage reduced the strength of the cracked roof joists to below the load-carrying capacity of the roof joists. (Def.'s 56.1 ¶ 34.) The cracked roof joists would not have failed under normal design loads on June 28, 1999 but for the old fire damage in the roof joists at the time of the collapse. (Def.'s 56.1 ¶ 34.) Structural engineers believe that information about fire damage to the roof joists is necessary to the evaluation of the risk of future collapse. (Def.'s 56. 1 ¶ 34.) Structural engineers believe that fire damage to roof joists substantially increases the risk of collapse of the roof. (Def.'s 56.1 ¶ 34.)

After Penn-America learned of the effect of the prior fire damage on the structure of the premises, it rescinded the fire-collapse section of the policy and returned the premium to Plaintiffs. (Def.'s 56.1 ¶ 23; Pls.' 56.1 ¶ 13.) During the investigation, Mr. Much confirmed that there had been a prior fire. (Def.'s 56.1 ¶ 25.)

This lawsuit by Plaintiffs against Penn-America arises from the rescission of the policy's fire and collapse insurance coverage issued on Plaintiffs' application to insure the hazard of fire and collapse to the premises. (Def.'s 56.1 ¶ 9.) During his deposition, Mr. Much testified that there was fire damage to the wooden roof joists in 1995 but that the joists had been fully repaired. (Def.'s 56.1 ¶ 26.)

## DISCUSSION

Defendant, Penn-America, moves for summary judgment on Plaintiffs', Mr. and Mrs. Much's, claim that Penn-America is liable to Plaintiffs for failure to pay a claim on an insurance policy insuring a building owned by Plaintiffs. Penn-America argues that summary judgment is proper because the policy is void under section 154 of the Illinois Insurance Code since Plaintiffs made a material misrepresentation in their application for insurance when they did not disclose that a prior fire had occurred at the premises within the past five years.

Plaintiffs also move for summary judgment on the issue of liability. Plaintiffs argue that summary judgment is appropriate because there was no material misrepresentation under Illinois law where Penn-America knew of the prior fire at the premises when it was disclosed in an earlier application for insurance.

Section 154 of the Illinois Insurance Code provides:

> No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.

215 Ill. Comp. Stat. 5/154 (2002). "A misrepresentation in an application for insurance is 'a statement of something as a fact which is untrue and affects the risk undertaken by the insurer.'" *Methodist Med. Ctr. of Ill. v. American Med. Sec., Inc.*, 38 F.3d 316, 319 (7th Cir. 1994) (citing *Northern Life Ins. Co. v. Ippolito Real Estate P'ship*, 234 Ill. App. 3d 792, 801 (1992); *Ratcliffe v. International Surplus Lines Ins. Co.*, 194 Ill. App. 3d 18, 25 (1990)). Failure to disclose material information on an application can constitute a misrepresentation when the failure prevents the insurer from adequately assessing the risk involved. *Methodist Med. Ctr.*, 38 F.3d at 320.

A material misrepresentation will void an insurance contract whether it is made in good faith, mistakenly, or with an intent to deceive. *Methodist Med. Ctr.*, 38 F.3d at 320. "A misrepresentation is material if 'reasonably careful and intelligent persons would regard the facts as stated to substantially increase the chances of the event insured against, so as to cause a rejection of the application.'" *Methodist Med. Ctr.*, 38 F.3d at 320 (citations omitted). An insurer can establish materiality with the testimony of one of its underwriters or other employees. *Methodist Med. Ctr.*, 38 F.3d at 320 (citations omitted). While materiality is a question of fact, "summary judgment is appropriate where the misrepresentation is of such a nature that no one would dispute its materiality." *Methodist Med. Ctr.*, 38 F.3d at 320.

An applicant for insurance has a duty to act in good faith and disclose fully and completely all relevant information so that the insurer may properly assess the risk. *Royal Maccabees Life Ins. Co. v. Malachinski*, 161 F. Supp. 2d 847, 854 (N.D. Ill. 2001) (citing *Kioutas v. Life Ins. Co.*, 35 F. Supp. 2d 616, 623 (N.D. Ill. 1998)). Under Illinois law, "[a]n insurer is entitled to rely upon the truthfulness of an applicant's answer and has no duty to conduct an independent investigation into their accuracy." *Malachinski*, 161 F. Supp. 2d at 854 (citing *Garde v. Inter-Ocean Ins. Co.*, 842 F.2d

175, 178 (7th Cir. 1988); *Kioutas*, 35 F. Supp. 2d at 623). However, "when an insurer has been put on notice that an insurance application contains false answers, it may be under a duty to investigate the correctness of those answers." *Gibler v. Midwest Computer Register Corp.*, No. 86 C 3111, 1987 WL 17817, at *2 (N.D. Ill. Sept. 23, 1987).

Penn-America has not presented any evidence of an actual intent to deceive on the part of Plaintiffs. Therefore, Penn-America must demonstrate that there was a material misrepresentation to avoid the policy.

There remain genuine issues of material fact from which a rational jury could return a verdict in the non-moving party's favor as to whether Plaintiffs' failure to disclose the prior fire in the 1998 application was a material misrepresentation. The structural engineer, Domel, stated that the prior fire and resulting damage at the premises substantially increased the chances of the event insured against, the collapse of the roof. *Methodist Med. Ctr.*, 38 F.3d at 320. Penn-America stated that, under its underwriting guidelines and procedures, such information was necessary to evaluating the risk of future collapse and that it would not have issued a policy if such information had been known at the time it considered Plaintiffs' 1998-1999 application.

However, Penn-America issued the 1996-1997 policy after Plaintiffs disclosed the prior fire in the 1996-1997 application. Neither party has established whether the MGAs who issued the two policies used the same or different standards in assessing the risk. Moreover, Plaintiffs have not presented any evidence that controverts Domel's testimony that the prior fire increased the chances of the roof collapsing. Thus, a genuine issue of material fact exists as to the materiality of Plaintiffs' misrepresentation.

Plaintiffs argue that Penn-America is estopped from relying on any alleged material

-8-

misrepresentation because Penn-America knew about the prior fire, which was disclosed in the 1996-1997 application, before it issued the 1998-1999 policy. "In Illinois, the general rule is that an insurer who knows the truth about an insurance applicant's . . . condition is estopped from avoiding the policy on the basis that the insured made material misrepresentations about that condition in the application." *New England Mutual Life Ins. v. Bank of Ill.*, 994 F. Supp. 970, 982 (N.D. Ill. 1998).

There remain genuine issues of material fact from which a rational jury could return a verdict in the non-moving party's favor as to whether Penn-America had actual or constructive knowledge of the prior fire. It is undisputed that the 1998-1999 application did not disclose that there had been a prior fire at the premises in 1995 or that Plaintiffs had had a prior policy with Penn-America that was cancelled. However, it is also undisputed that the 1996-1997 application did disclose the prior fire and loss. Neither party has submitted any evidence that would establish that it was, or was not, part of Penn-America's underwriting procedure to search its records for old applications and policies of every applicant or that Penn-America had ever done so. Furthermore, neither party has submitted any evidence that would establish that the two applications were, or were not, stored in the same or different locations or files.

While an insurer has no duty to investigate the accuracy of an applicant's answers unless it has been put on notice that the application contains false answers, *see Malachinski*, 161 F. Supp. 2d at 854, there is a genuine issue of material fact as to whether the fact that there was a prior application would have put Penn-America on notice that there was information missing from the 1998-1999 application.

Therefore, Penn-America's and Plaintiffs' Motions for Summary Judgment are denied.

## CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment [33-1] and Plaintiffs' Motion for Summary Judgment [27-1] are denied.

**IT IS SO ORDERED.**

_____
John W. Darrah, Judge
United States District Court

Date: February 13, 2002